FILED IN OPEN COURT
U.S.D.C. - Atlanta

FEB 12 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk



# GUILTY PLEA and PLEA AGREEMENT

United States Attorney
Northern District of Georgia

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION
CRIMINAL NO. 1:24-CR-00371-SDG

The United States Attorney for the Northern District of Georgia, the Fraud Section of the Criminal Division of the U.S. Department of Justice (collectively, "the Government"), and Defendant Elchonon ("Elie") Schwartz enter into this plea agreement as set forth below in Part IV pursuant to Rules 11(c)(1)(A) & (B) of the Federal Rules of Criminal Procedure. Elchonon ("Elie") Schwartz, Defendant, having received a copy of the above-numbered Information and having been arraigned, hereby pleads GUILTY to the Information.

## I. ADMISSION OF GUILT

1.  The Defendant admits that he is pleading guilty because he is in fact guilty of the crime charged in the Information.

## II. ACKNOWLEDGMENT & WAIVER OF RIGHTS

2.  The Defendant understands that by pleading guilty, he is giving up the right to plead not guilty and the right to be tried by a jury. At a trial, the Defendant would have the right to an attorney, and if the Defendant could not afford an attorney, the Court would appoint one to represent the Defendant at trial and at every stage of the proceedings. During the trial, the Defendant would be presumed innocent and the Government would have the burden of proving him guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the

witnesses against him. If the Defendant wished, he could testify on his own behalf and present evidence in his defense, and he could subpoena witnesses to testify on his behalf. If, however, the Defendant did not wish to testify, that fact could not be used against him, and the Government could not compel him to incriminate himself. If the Defendant were found guilty after a trial, he would have the right to appeal the conviction.

3.      The Defendant understands that by pleading guilty, he is giving up all of these rights and there will not be a trial of any kind.

4.      By pleading guilty, the Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could have been filed.

5.      The Defendant also understands that he ordinarily would have the right to appeal his sentence and, under some circumstances, to attack the conviction and sentence in post-conviction proceedings. By entering this Plea Agreement, the Defendant may be waiving some or all of those rights to appeal and to collaterally attack his conviction and sentence, as specified below.

6.      Finally, the Defendant understands that, to plead guilty, he may have to answer, under oath, questions posed to him by the Court concerning the rights that he is giving up and the facts of this case, and the Defendant's answers, if untruthful, may later be used against him in a prosecution for perjury or false statements.

### III.   <u>ACKNOWLEDGMENT OF PENALTIES</u>

7.     The Defendant understands that, based on his plea of guilty, he will be subject to the following maximum and mandatory minimum penalties:

**As to the sole charge in the Information – Wire Fraud (18 U.S.C. § 1343)**

    a.  Maximum term of imprisonment: 20 years.

    b.  Mandatory minimum term of imprisonment: None.

    c.  Term of supervised release: 0 years to 3 years.

    d.  Maximum fine: $250,000.00, or twice the gross gain or twice the gross loss, whichever is greatest, due and payable immediately.

    e.  Full restitution, due and payable immediately, to all victims of the offense(s) and relevant conduct.

    f.  Mandatory special assessment: $100.00, due and payable immediately.

    g.  Forfeiture of any and all proceeds from the commission of the offense, any and all property used or intended to be used to facilitate the offense, and any property involved in the offense.

8.     The Defendant understands that, before imposing sentence in this case, the Court will be required to consider, among other factors, the provisions of the United States Sentencing Guidelines and that, under certain circumstances, the Court has the discretion to depart from those Guidelines. The Defendant further understands that the Court may impose a sentence up to and including the statutory maximum as set forth in the

3

above paragraph and that no one can predict his exact sentence at this time.

9.    REMOVAL FROM THE UNITED STATES: The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Indeed, because the Defendant is pleading guilty to this offense, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the District Court, can predict to a certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## IV.   PLEA AGREEMENT

10.   The Defendant, his counsel, and the Government, subject to approval by the Court, have agreed upon a negotiated plea in this case, the terms of which are as follows:

### No Additional Charges

11.   The United States Attorney for the Northern District of Georgia, and the Fraud Section of the Criminal Division of the U.S. Department of Justice, agree not to bring further criminal charges against the Defendant related to

the charges to which he is pleading guilty. The Defendant understands that this provision does not bar prosecution by any other federal, state, or local jurisdiction.

## Factual Basis

12. The parties agree that if this case went to trial, the Government would prove by admissible evidence and beyond reasonable doubt the following facts:

   a. At all relevant times, the Defendant ran a commercial real estate investment firm and invested in commercial real estate through a group of companies organized under The Nightingale Group LLC (operating as Nightingale Properties) ("Nightingale"). Nightingale was a privately-held commercial real estate investment firm controlled and co-founded by the Defendant who served as its chief executive officer.

   b. Beginning in approximately May 2022, the Defendant solicited investments in commercial real estate properties in Atlanta, Georgia ("Atlanta Financial Center") and in approximately November 2022, Miami Beach, Florida ("Lincoln Place").

   c. To raise funds for the investments, the Defendant made securities offerings through the crowdfunding commercial real estate investing website, CrowdStreet Marketplace, which was operated by CrowdStreet, Inc. ("CrowdStreet").

      i. The Defendant, through Nightingale, executed agreements with CrowdStreet to obtain investments in the Atlanta

5

Financial Center and Lincoln Place through the CrowdStreet
Marketplace website.

ii.   Defendant sought investments from accredited investors by
means of a private placement under Regulation D of the
Securities Act of 1933 with a minimum investment per
investor of $25,000.

d.  *Atlanta Financial Center.* The Defendant formed ONH AFC CS
Investors LLC ("ONH AFC") as a real estate company whose sole
purpose was to contribute equity to fund the purchase of the Atlanta
Financial Center, a large commercial real estate complex in Atlanta,
Georgia, located at 3333 Peachtree Road NE, 3343 Peachtree Road
NE, and 3353 Peachtree Road NE.

i.    The Defendant, through ONH AFC and other affiliates,
planned to purchase and renovate the Atlanta Financial
Center with, among other things, equity raised from investors
in ONH AFC.

ii.   On May 26, 2022, Nightingale launched the offering for ONH
AFC on the CrowdStreet Marketplace, and investments were
accepted until February 2023.

iii.  Under the Defendant's management, the initial goal was to
raise $16 million for the Atlanta Financial Center project, but
the Defendant ultimately raised approximately $54 million
from approximately 654 investors with investments ranging in
size from $25,000 to $1 million.

e. *Lincoln Place*. The Defendant formed ONH 1601 CS Investors LLC ("ONH 1601") as a real estate company whose sole purpose was to recapitalize and purchase equity interests in Lincoln Place, a mixed-use building in Miami Beach, Florida, located at 1601 Washington Avenue, 1605 Washington Avenue, and 1619 Washington Avenue.

    i. The Defendant, through ONH 1601 and other affiliates, planned to provide a large renovation investment in Lincoln Place with, among other things, equity raised from investors in ONH 1601.

    ii. On November 1, 2022, Nightingale launched the offering for ONH 1601 on the CrowdStreet Marketplace, and investments were accepted until March 2023.

    iii. Under the Defendant's management, the initial goal was to raise $15 million for the Lincoln Place project, but the Defendant ultimately raised approximately $8.8 million from approximately 167 investors with investments ranging in size from $25,000 to $500,000.

f. The Defendant raised, in total, approximately $62.8 million through CrowdStreet from investors in the Atlanta Financial Center and Lincoln Place. Under the Defendant's agreement with CrowdStreet, the funds raised from investors were to be held in segregated bank accounts, which were controlled by the Defendant, until the closing of each respective project.

7

      i.    In addition, in the Private Placement Memoranda for the two investments, which were provided to investors, stated that "[t]he proceeds from this Offering will be used to purchase, lease, reposition, and extensively renovate" the properties.

     ii.    The Subscription Agreements for each investment stated that the Defendant, through ONH AFC and ONH 1601, would only "use any proceeds from this Offering, net of any organizational and offering expenses, to fund" the investment in each property.

   iii.    The Operating Agreements for each investment further provided that the Defendant had a fiduciary duty to safeguard the funds and prohibit commingling or use of the money that did not benefit ONH AFC and ONH 1601.

g.  Notwithstanding these representations and restrictions on the use of funds, and before either transaction closed, the Defendant misappropriated and converted the funds raised through CrowdStreet.

h.  By June 2023, the Defendant had transferred (or caused to be transferred) substantially all of the money raised through CrowdStreet for the Atlanta Financial Center and Lincoln Place investments out of the segregated bank accounts, including by directing money to his personal bank account, personal brokerage account, and accounts for other, unrelated commercial real estate investments affiliated with, and controlled by, the Defendant.

8

i. For example, on March 13, 2023, the Defendant transferred $1 million from the segregated bank account for the ONH AFC CrowdStreet investors (ending in x6789) to Business Bank Account #1 (ending in x2469), which was controlled by the Defendant.

1. Later on March 13, 2023, from Business Bank Account #1, the Defendant transferred $350,000 to Business Bank Account #2 (ending in x7082), which was controlled by the Defendant, and the Defendant used the funds to purchase luxury watches. For example, on March 15, 2023, the Defendant caused a wire transfer of $30,000 to be sent using interstate wires from Business Bank Account #2 to an account with an address in Texas for a watch seller that was based in California.

2. On March 14, 2023, from Business Bank Account #1, the Defendant transferred $500,000 to Business Bank Account #3 (ending in x4196), which was controlled by the Defendant, and the Defendant used the funds to pay payroll expenses for his commercial real estate businesses.

ii. As a second example, on March 15, March 21, and March 23, 2023, the Defendant transferred $4.2 million, $7.205 million, and $750,000, respectively (in total, $12.155 million), from the segregated bank account for the ONH AFC CrowdStreet

investors to Brokerage Account #1 (ending in x7009), which
was an investment brokerage account controlled by the
Defendant.

> 1. Between March 13 and March 17, 2023, the Defendant
>    had purchased a series of different stocks and call
>    options in Brokerage Account #1, totaling
>    approximately $12.153 million, including the purchase
>    of 288,340 shares of First Republic Bank (at a cost of
>    $20.537 and $22.56 per share, for a total cost of over
>    $6 million), 265 First Republic Bank 05/19/23 $25 call
>    options (at a cost of $1,501.199 per contract, for a total
>    cost of over $397,000) and 250,000 shares of Credit
>    Suisse (at a cost of $2.03 per share, for a total cost of
>    over $507,000).

i. In mid-July 2023, ONH AFC and ONH 1601 filed for Chapter 11
bankruptcy.

### Sentencing Guidelines Recommendations

13.   Based upon the evidence currently known to the Government, the
Government agrees to make the following recommendations and/or to
enter into the following stipulations.

**Base/Adjusted Offense Level**

14.   The Government agrees to recommend and the Defendant agrees that:

a.  The applicable offense guideline is U.S.S.G. § 2B1.1, which establishes a base offense level of 7 because the offense of conviction has a statutory maximum term of imprisonment of 20 years or more.

b.  The amount of loss resulting from the offense of conviction and all relevant conduct is more than $25,000,000 but less than $65,000,000, which results in a 22-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(L).

c.  The offense of conviction involved 10 or more victims, which results in a 2-level increase pursuant to U.S.S.G. § 2B1.1(b)(2)(A).

**Acceptance of Responsibility**

15.  The Government will recommend that the Defendant receive an offense level adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, to the maximum extent authorized by the guideline. However, the Government will not be required to recommend acceptance of responsibility if, after entering this Plea Agreement, the Defendant engages in conduct inconsistent with accepting responsibility. Thus, by way of example only, should the Defendant falsely deny or falsely attempt to minimize the Defendant's involvement in relevant offense conduct, give conflicting statements about the Defendant's involvement, fail to pay the special assessment, fail to meet any of the obligations set forth in the Financial Cooperation Provisions set forth below, or participate in additional criminal conduct, including unlawful personal use of a controlled substance, the Government will not be required to recommend an adjustment for acceptance of responsibility.

**Right to Answer Questions, Correct Misstatements,
and Make Recommendations**

16.    The parties reserve the right to inform the Court and the Probation Office
       of all facts and circumstances regarding the Defendant and this case, and
       to respond to any questions from the Court and the Probation Office and
       to correct any misstatements of fact or law. Except as expressly stated
       elsewhere in this Plea Agreement, the parties also reserve the right to make
       recommendations regarding the application of the Sentencing Guidelines.
       The parties understand, acknowledge, and agree that there are no
       agreements between the parties with respect to any Sentencing Guidelines
       issues other than those specifically listed.

**Right to Modify Recommendations**

17.    With regard to the Government's recommendation as to any specific
       application of the Sentencing Guidelines as set forth elsewhere in this Plea
       Agreement, the Defendant understands and agrees that, should the
       Government obtain or receive additional evidence concerning the facts
       underlying any such recommendation, the Government will bring that
       evidence to the attention of the Court and the Probation Office. In
       addition, if the additional evidence is sufficient to support a finding of a
       different application of the Guidelines, the Government will not be bound
       to make the recommendation set forth elsewhere in this Plea Agreement,
       and the failure to do so will not constitute a violation of this Plea
       Agreement.

<u>**Sentencing Recommendations**</u>

18.  Unless the Defendant engages in conduct inconsistent with accepting responsibility, as described more fully in the "Acceptance of Responsibility" paragraph above, the Government agrees to recommend that the Defendant be sentenced at the low-end of the Sentencing Guidelines range and may recommend a period of supervised release to follow. The Government agrees that the Defendant has reserved the right to seek a sentence below the Sentencing Guidelines range based upon factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

**Fine--Recommendation as to Amount**

19.  Based on the information currently available to it, and in light of the Defendant's restitution obligations, the Government agrees to recommend that the Defendant does not have the financial resources to pay a fine.

**Restitution**

20.  The Defendant agrees to pay full restitution, plus applicable interest, to the Clerk of Court for distribution to all victims of the offense to which he is pleading guilty and all relevant conduct, including, but not limited to, any counts dismissed as a result of this Plea Agreement. The Defendant understands that the amount of restitution owed to each victim will be determined at or before sentencing. The Defendant also agrees to cooperate fully in the investigation of the amount of restitution, the identification of victims, and the recovery of restitution for victims.

21.     The Government and the Defendant agree that any restitution order in this case can be satisfied, in whole or in part, through payments made to victims in connection with the liquidation of the Defendant's assets in the bankruptcy proceeding, *In re ONH AFC CS Investors LLC*, 23-bk-10931 (D. Del.) (the "Bankruptcy").

22.     When the Bankruptcy closes, the parties understand that the Bankruptcy Liquidating Trustee will provide the Clerk of Court for the Northern District of Georgia with a report that contains a list of investors in ONH AFC and ONH 1601; their mailing address; and all funds that were distributed to each investor through the Bankruptcy. Pursuant to 18 U.S.C. § 3664(j)(2), the parties agree that the ordered restitution shall be reduced by amounts recovered as compensatory damages for the same loss by a victim to whom the Defendant is ordered to pay restitution at sentencing, including recoveries documented subsequent to the conclusion of any proceedings in this case such as payments made by the Bankruptcy Liquidating Trustee to a victim in this case. The Defendant agrees that in the event the payments made by the Bankruptcy Liquidating Trustee are insufficient to satisfy his entire restitution obligation to each victim, the Defendant is liable for the remaining restitution owed to victims, which will be due and payable immediately.

**Forfeiture**

23.     The Government agrees not to seek forfeiture of the Defendant's property in connection with this case in favor of restitution.

## Financial Cooperation Provisions

**Special Assessment**

24.     The Defendant agrees that he will pay a special assessment in the amount
        of $100 by money order or certified check made payable to the Clerk of
        Court, U.S. District Court, 2211 U.S. Courthouse, 75 Ted Turner Drive SW,
        Atlanta, Georgia 30303, by the day of sentencing. The Defendant agrees to
        provide proof of such payment to the undersigned Assistant United States
        Attorney upon payment thereof.

**Fine/Restitution - Terms of Payment**

25.     The Defendant agrees to pay any fine and/or restitution, plus applicable
        interest, imposed by the Court to the Clerk of Court for eventual
        disbursement to the appropriate account and/or victim(s). The Defendant
        also agrees that the full fine and/or restitution amount shall be considered
        due and payable immediately. If the Defendant cannot pay the full amount
        immediately and is placed in custody or under the supervision of the
        Probation Office at any time, he agrees that the custodial agency and the
        Probation Office will have the authority to establish payment schedules to
        ensure payment of the fine and/or restitution. The Defendant understands
        that this payment schedule represents a minimum obligation and that,
        should the Defendant's financial situation establish that he is able to pay
        more toward the fine and/or restitution, the Government is entitled to
        pursue other sources of recovery of the fine and/or restitution. The
        Defendant further agrees to cooperate fully in efforts to collect the fine
        and/or restitution obligation by any legal means the Government deems

15

appropriate. Finally, the Defendant and his counsel agree that the Government may contact the Defendant regarding the collection of any fine and/or restitution without notifying and outside the presence of his counsel.

**Financial Disclosure**

26.    The Defendant agrees that the Defendant will not sell, hide, waste, encumber, destroy, or otherwise devalue any such asset worth more than $10,000 before sentencing, without the prior approval of the Government. The Defendant understands and agrees that the Defendant's failure to comply with this provision of the Plea Agreement should result in the Defendant receiving no credit for acceptance of responsibility.

27.    The Defendant agrees to cooperate fully in the investigation of the amount of forfeiture, restitution, and fine; the identification of funds and assets in which he has any legal or equitable interest to be applied toward forfeiture, restitution, and/or fine; and the prompt payment of restitution or a fine.

28.    The Defendant's cooperation obligations include: (A) fully and truthfully completing the Department of Justice's Financial Statement of Debtor form, and any addenda to said form deemed necessary by the Government, within ten days of the change of plea hearing; (B) submitting to a financial deposition or interview (should the Government deem it necessary) prior to sentencing regarding the subject matter of said form; (C) providing any documentation within his possession or control requested by the Government regarding his financial condition and that of

16

his household; (D) fully and truthfully answering all questions regarding his past and present financial condition and that of his household in such interview(s); and (E) providing a waiver of his privacy protections to permit the Government to access his credit report and tax information held by the Internal Revenue Service.

29.    So long as the Defendant is completely truthful, the Government agrees that anything related by the Defendant during his financial interview or deposition or in the financial forms described above cannot and will not be used against him in the Government's criminal prosecution. However, the Government may use the Defendant's statements to identify and to execute upon assets to be applied to the fine and/or restitution in this case. Further, the Government is completely free to pursue any and all investigative leads derived in any way from the interview(s)/deposition(s)/financial forms, which could result in the acquisition of evidence admissible against the Defendant in subsequent proceedings. If the Defendant subsequently takes a position in any legal proceeding that is inconsistent with the interview(s)/deposition(s)/financial forms–whether in pleadings, oral argument, witness testimony, documentary evidence, questioning of witnesses, or any other manner–the Government may use the Defendant's interview(s)/deposition(s)/financial forms, and all evidence obtained directly or indirectly therefrom, in any responsive pleading and argument and for cross-examination, impeachment, or rebuttal evidence. Further, the Government may also use the Defendant's

17

interview(s)/deposition(s)/financial forms to respond to arguments made or issues raised sua sponte by the Magistrate or District Court.

## Recommendations/Stipulations Non-binding

30.    The Defendant understands and agrees that the recommendations of the Government incorporated within this Plea Agreement, as well as any stipulations of fact or guideline computations incorporated within this Plea Agreement or otherwise discussed between the parties, are not binding on the Court and that the Court's failure to accept one or more of the recommendations, stipulations, and/or guideline computations will not constitute grounds to withdraw his guilty plea or to claim a breach of this Plea Agreement.

## Limited Waiver of Appeal

31.    LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the District Court. Claims that the Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct

appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

## Miscellaneous Waivers

### FOIA/Privacy Act Waiver

32.   The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act of 1974, Title 5, United States Code, Section 552a.

## BOP Designation Request

33.   The Government agrees not to oppose a designation request by the Defendant at his sentencing hearing for the Court to recommend that any term of incarceration imposed by the Court be served at the Federal Bureau of Prisons ("BOP") facility at FCI Otisville. The Defendant acknowledges and understands, however, that the designation decision rests in the sole discretion of the BOP.

## No Other Agreements

34.   There are no other agreements, promises, representations, or understandings between the Defendant and the Government.

In Open Court this _____ day of _____, _____.

SIGNATURE (Defendant's Attorney)
Colin Garrett

SIGNATURE (Defendant)
Elchonon Schwartz

SIGNATURE (Assistant U.S. Attorney)
Kelly K. Connors

SIGNATURE (Trial Attorney, Department of Justice)
Matthew F. Sullivan

SIGNATURE (Approving Official)
Stephen H. McClain

I have read the Information against me and have discussed it with my attorney. I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial. I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding. No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission. I am fully satisfied with the representation provided to me by my attorney in this case.

_____          _7_/12/2025_____
SIGNATURE (Defendant)                            DATE
Elchonon Schwartz

I am Elchonon Schwartz's lawyer. I have carefully reviewed the charges and the Plea Agreement with my client. To my knowledge, my client is making an informed and voluntary decision to plead guilty and to enter into the Plea Agreement.

_____          _____2/12/25_____
SIGNATURE (Defendant's Attorney)          DATE
Colin Garrett


Colin Garrett
Federal Defender Program
101 Marietta St. NW, Suite 1500
Atlanta, GA 30303
(404) 688-7530


Filed in Open Court

This ___ day of _____, 2025

By _____

22

U. S. DEPARTMENT OF JUSTICE

Statement of Special Assessment Account

This statement reflects your special assessment only. There may be other penalties imposed at sentencing.

| ACCOUNT INFORMATION | |
| --- | --- |
| CRIMINAL ACTION NO.: | 1:24-CR-00371-SDG |
| DEFENDANT'S NAME: | ELCHONON SCHWARTZ |
| PAY THIS AMOUNT: | $100 |

Instructions:

1. Payment must be made by **certified check** or **money order** payable to:
   Clerk of Court, U.S. District Court
   **\*personal checks will not be accepted\***
2. Payment must be made to the clerk's office by the day of sentencing.
3. Payment should be sent or hand delivered to:
   Clerk, U.S. District Court
   2211 U.S. Courthouse
   75 Ted Turner Drive SW
   Atlanta, Georgia 30303
   (Do Not Send Cash)
4. Include the defendant's name on **certified check** or **money order.**
5. Enclose this coupon to insure proper and prompt application of payment.
6. Provide proof of payment to the above-signed AUSA within 30 days of the guilty plea.