



**SUBSCRIPTION AGREEMENT**

**OF**

**ONH AFC CS Investors LLC**

**(a Delaware Limited Liability Company)**

**(the "Company")**

**$16 Million**

**Dated: April 25, 2022**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CROWDSTREET                                    CSTREET 0000227

**THIS OFFERING IS RESTRICTED TO ACCREDITED INVESTORS WITHIN THE MEANING OF RULE 501(a) UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT").**

**THIS OFFERING IS BEING MADE PURSUANT TO § 4(a)(2) OF THE SECURITIES ACT AND REGULATION D PROMULGATED UNDER THE SECURITIES ACT. THE SECURITIES OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OR UNDER ANY STATE ACTS AND MAY NOT BE SOLD, TRANSFERRED, PLEDGED, OR HYPOTHECATED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACTS OR AN OPINION OF COUNSEL ACCEPTABLE TO THE MANAGER OF THE COMPANY (THE "MANAGER") TO THE EFFECT THAT REGISTRATION IS NOT REQUIRED.**

# ONH AFC CS Investors LLC

## SUBSCRIPTION AGREEMENT

In order to subscribe for this offering (the "**Offering**") of Membership Interests (the "**Membership Interests**"), each at a price of $25,000.00 per Membership Interest, in ONH AFC CS Investors LLC, a Delaware limited liability company (the "**Company**"), a prospective investor must complete and execute these subscription documents in accordance with the instructions set forth herein. The Membership Interests are also referred to herein as the "**Securities**". Please review the attendant Private Placement Memorandum dated April 25, 2022 (the "**Private Placement Memorandum**") in its entirety.

The subscription period for this Offering will be a rolling period, commencing on the date of the Private Placement Memorandum, and terminating upon the earliest of (i) the date at which the maximum offering amount has been sold, or (ii) the date at which the Offering is terminated by the Company in its sole discretion. The minimum subscription amount is $25,000 per investor, which may be waived in the Company's discretion.

The Offering will be on a "best efforts" basis. The Company is seeking to raise at least $16,000,000 in the aggregate (the "**Minimum Raise**"). The Company will use any proceeds from this Offering, net of any organizational and offering expenses, to fund through its direct or indirect subsidiaries the Property located at 3333 Peachtree Rd. NE, 3343 Peachtree Rd. NE, 3353 Peachtree Rd. NE, Atlanta, GA 30326 and Managed by One Night Holdings LLC, a Delaware limited liability company.

The Company anticipates that in the event that the Minimum Raise is not raised from investors who solely utilize the CrowdStreet Marketplace by May 26, 2022 (the "Benchmark Date"), the Company, in its sole discretion, may (a) continue the Offering for ninety (90) days following the Benchmark Date by exploring other capital sources to achieve the Minimum Raise, or (b) terminate the Offering, in each case with the Company, in its sole discretion, reserving the right to return all, part or none of the subscription funds in the event that the Minimum Raise is not achieved. Neither the Manager, nor any other affiliates of the Company are obligated to contribute to the Minimum Raise.

Please be sure that your name appears in exactly the same way in each signature and in each place where it is marked in the documents.

Subscriptions from suitable prospective investors will be accepted at the sole discretion of the Company after receipt of all subscription documents, properly completed and executed.

If you have any questions concerning the completion of this Subscription Agreement, please contact ███████████████.

**SUBSCRIPTION AGREEMENT**

**ONH AFC CS Investors LLC**

Name of Subscriber: _____

Subscription Amount: $_____

    Please wire funds to:    **Bank**: ███████████
    **ABA / Routing #:** ████████
    **Account No**. ████████
    **SWIFT Code**: ████████
    **Account Name**: ███████████████

    **Ref**.:    [Name of Subscriber]

It is recommended that your bank charge its wiring fees, if any, separately so that the amount you have elected to invest in the Company may be invested.

1. **Subscription**. The undersigned (the "**Subscriber**"), pursuant to this Subscription Agreement (the "**Subscription Agreement**"), hereby irrevocably subscribes for the Membership Interests set forth above on the terms and conditions set forth herein (the "**Subscription**"). In exchange for the Membership Interests, the Subscriber has submitted the Subscription Amount, by wire transfer or other immediately available funds, to the account designated above.

2. **Subscriber Details.**

    Address: _____

    _____ c/o Company Name if Applicable

    _____ Number and Street - (P.O. Box Unacceptable)

    City _____  State _____  Zip Code _____

    Telephone Number: _____   Telefax Number: _____
                (Area Code)   Number                (Area Code)   Number

    E-Mail Address: _____

For distributions of cash, please credit funds to the Subscriber's account at:

    Bank Name: _____

    Bank Address: _____

    ABA or CHIPS No: _____

    Account Name: _____

    Account No.: _____

    Reference: _____

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CROWDSTREET    CSTREET 0000229

**FOR ENTITIES ONLY:** Set forth below are the names of persons authorized by the undersigned to give and receive instructions between the Company (or its Managing Member) and the undersigned, together with their respective signatures. Such persons are the only persons so authorized until further written notice to the Managing Member signed by one or more of such persons.

| Name | Signatures |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

Will Subscriber use the assets of a "Benefit Plan Investor" to invest in the Company. A Benefit Plan Investor includes: (i) any employee benefit plan subject to the fiduciary rules of Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), (ii) any plan or account subject to Section 4975 of the Internal Revenue Code of 1986, as amended, (iii) any entity, including a master trust established for one or more pension plans, or an insurance company pooled separate account whose underlying assets constitute plan assets by reason of investment in the entity by plans described in clauses (i) or (ii) above, and (iv) in some cases, the general account of an insurance company.

☐ YES    ☐ NO

**2A.   Investor Suitability Representations (To Be Completed By Individuals And Grantors Of Revocable Trusts Only)**

**Interests To Be Registered As Follows:** (Check One)

__   INDIVIDUAL

__   CO-OWNERS (indicate whether joint tenants with rights of survivorship, tenants by the entirety or tenants in common) (if any co-owner is not a subscriber's spouse, such co-owner must complete an additional Part III of this Subscription Agreement)

__   GRANTOR OF A REVOCABLE TRUST (the Subscription Agreement must be completed on behalf of the trust, but details in this Part III should relate to the Grantor)

**General Information:**

Subscriber Social Security or Federal Tax I.D. Number: _____

Occupation: _____

Citizenship - Country: _____

Tax Residence: _____

3

**Joint Subscribers please complete (if applicable)**

Name of Joint Subscriber: _____

Social Security or Federal Tax I.D. Number: _____

Residence Address: _____

_____

Telephone Number: _____

Facsimile Number: _____

E-Mail Address: _____

Occupation: _____

Citizenship - Country: _____

**Accredited Investor Questions:**

For purposes of calculating net worth in the certifications below, an investor may exclude indebtedness secured by the investor's primary residence, provided that such indebtedness does not exceed the fair market value of such residence and was not incurred within 60 days of the date of the subscription made hereby.

(Please check all that apply.  If none apply, consult with the Managing Member.)

☐ Subscriber is a natural person and Subscriber's net worth (exclusive of Subscriber's primary resident), or joint net worth with the Subscriber's spouse, exceeds $1,000,000.

☐ Subscriber is a natural person and Subscriber has individual income exceeding $200,000 in each of the prior two years or joint income with a spouse exceeding $300,000 in each of those years and the Subscriber has a reasonable expectation of reaching the same income level in the current year.

☐ The Subscriber is a revocable trust which may be amended or revoked at any time by the grantor thereof, the grantor of which is an accredited investor.

**Verification of Status as a United States Person**

The Subscriber is a United States citizen or is a resident of the United States?

☐ YES   ☐ NO

**2B.**   **Investor Suitability Representations (To Be Completed By Entities Only)**

4

**Subscriber Ownership:  (Check Form Of Organization Of Subscriber)**

__ TRUST (other than Grantor Revocable Trusts)
__ CORPORATION
__ PARTNERSHIP
__ LIMITED LIABILITY COMPANY
__ ESTATE
__ FOUNDATION
__ EMPLOYEE BENEFIT PLAN
__ OTHER (SPECIFY):_____

**General Information:**

Subscriber Federal Tax I.D. Number: _____

Tax Residence: _____

Tax Year End Date: _____

**Accredited Investor Questions:**

The Subscriber is (check each appropriate item):

☐ (a) A corporation, limited liability company, Massachusetts or similar business trust or partnership not formed for the specific purpose of acquiring the Interests offered and with total assets in excess of $5,000,000.

☐ (b) A trust having total assets in excess of $5,000,000 that was not formed for the specific purpose of acquiring Interests in which the investment in the Company is being directed by a sophisticated person as defined in Regulation D under the Securities Act.

☐ (c) A broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934 (the "Exchange Act").

☐ (d) An insurance company as defined in Section 2(13) of the Securities Act.

☐ (e) An investment company registered under the Investment Company Act.

☐ (f) A business development company as defined in Section 2(a)(48) of the Investment Company Act.

☐ (g) A small business investment company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

☐ (h) A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940 ("Advisers Act").

☐ (i) A bank as defined in Section 3(a)(2) of the Securities Act, a savings and loan association, or another institution as defined in Section 3(a)(5)(A) of the Securities Act, that is acting in its individual or a fiduciary capacity and is subscribing for the purchase of the Interests on behalf of a trust account or accounts.

☐ (j) An entity in which all the equity owners are accredited investors as indicated in this item 2 or in Part III, item 2 of this Subscription Agreement. (If YES, the Managing Member, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.)

5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CROWDSTREET                    CSTREET 0000232

☐ (k) An employee benefit plan within the meaning of Title I of ERISA, with respect to which the decision to invest in the Company was made by a plan fiduciary as defined in Section 3(21) of ERISA that is a bank, savings and loan association, insurance company or investment adviser registered under the Advisers Act and which has total assets in excess of $5,000,000.

☐ (l) A plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees that has total assets in excess of $5,000,000.

☐ (m) None of the above (please describe:_____).

**Verification of Status of United States Person**

The Subscriber is an entity organized under the laws of the United States or a state thereof, or is otherwise a United States Person as described in Section 7701(a)(30) of the Internal Revenue Code of 1986, as amended.

☐ YES   ☐ NO

3. **Company Documents**. The Subscriber agrees to be bound by the terms of the Company's limited liability company agreement (the "**Company Agreement**"). A summary of the material terms of the Company Agreement along with a copy of the Company Agreement has been included in the Private Placement Memorandum, which is hereby incorporated by reference.

   The Subscriber agrees to become a member of the Company upon the Subscriber's execution and delivery, and the Company's acceptance, in the Company's sole discretion, of the signature page to the Company Agreement attached hereto as Annex A. The Subscriber hereby acknowledges its receipt, review, and approval of the terms, provisions, and conditions of the Company Agreement and the respective documents and instruments identified therein and incorporated by reference therein (the "**Company Documents**", and together with this Subscription Agreement, the "**Subscription Documents**"), and such other documents and information as deemed necessary by the Subscriber to enter into this Subscription Agreement.

4. **Subscriber Deliveries**. Contemporaneously with the execution and delivery of this Subscription, the Subscriber will execute and deliver a counterpart signature page of the Company Agreement attached hereto as **Annex A**, together with the signed Subscription Agreement to the Company, and deliver the Subscription Amount to the Company by wire transfer or other immediately available funds. If the Subscriber fails to tender each of the Subscription Documents, a signature page to the Company Agreement, and the Subscription Amount in accordance with these requirements, this Subscription will be rendered null and void and of no force or effect. **TIME IS OF THE ESSENCE OF THIS SUBSCRIPTION AND ITS RELATED AGREEMENTS**.

5. **Minimum Raise**.

   If the Minimum Raise is not achieved, the Company, in its sole discretion, reserves the right to close on any amount of subscriptions received or otherwise to return all, part or none of the subscription funds.

6. **Acceptance or Rejection of Subscription.**

   A. The Subscriber acknowledges, understands and agrees that: (i) all questions as to the validity, form, eligibility (including time of receipt) and acceptance of a completed Subscription Agreement will be determined by the Company, which determination will be final and binding and in the Company's sole discretion; (ii) the Company will be under no duty to give any notification of

irregularities in connection with any attempted subscription for the Membership Interests or incur any liability for failure to give such notification; (iii) until such irregularities have been cured or waived (in the sole discretion of the Company), no subscription for the Membership Interest will be accepted; (iv) this Subscription Agreement will not be deemed accepted by the Company until the Company provides written notice that it has been accepted, which is in the sole discretion of the Manager; and (v) the Subscriber is not entitled to cancel, terminate, or revoke the Subscription once this Subscription Agreement is executed and delivered by the Subscriber, and any agreements made in connection herewith will survive death or disability. The Company's interpretation of the terms and conditions for the Subscription and purchase of the Membership Interests (including these instructions) will be final and binding. The Company may accept all or part of the dollar amount subscribed for by the Subscriber and will indicate such acceptance, if any, by executing the signature page to this Subscription Agreement.

B. Notwithstanding the foregoing or that this Subscription may have been previously accepted by the Company, if the Company determines that the Offering is over-subscribed, Manager may, in its sole discretion, reduce the amount of the Membership Interest to be sold to the Subscriber by such amount as the Company determines (which amount need not be the same or in the same percentage as any other subscriber in the Offering) and this Subscription Agreement will thereafter be deemed amended in all respects to reflect such reduction. The Company will give prompt notice of any such reduction to the Subscriber.

7. **Representations and Warranties**. By executing this Subscription Agreement, the undersigned:

(a) Represents and warrants that the Securities being acquired will be acquired for the undersigned's own account without a view to public distribution or resale and that the undersigned has no contract, undertaking, agreement, or arrangement, directly or indirectly, to sell or otherwise transfer or dispose of any Securities or any portion thereof to any other person, including, but not limited to, through any swap, structured note or other derivative instrument with a third party the return of which is based in whole or in part on the return of the Company.

(b) Represents and warrants, if it is a partnership, joint venture, corporation, trust or other entity, that (i) was not formed or operated for the purpose of investing in the Company and is not investing more than 40% of its total assets or committed capital, whichever is greater, in the Company; and (ii) allocates all items of income, gain, loss and deduction according to a single set of capital accounts, and does not permit its shareholders, members, partners, grantors, trustees or other beneficiaries or owners (or any other persons or entities having a relationship similar to the foregoing), as the case may be, to opt in or out of particular investments made by the Subscriber.

(c) Represents and warrants that the undersigned (i) can bear the economic risk of the purchase of Securities, including the total loss of the undersigned's investment and (ii) has such knowledge and experience in business and financial matters as to be capable of evaluating the merits and risks of an investment in Securities.

(d) Represents and warrants that the undersigned is an "accredited investor" as defined in Rule 501(a) under the Securities Act.

(e) Understands that the Securities will not be registered under the Securities Act or the securities laws of any jurisdiction, will be subject to substantial restrictions on transfer, and must be held indefinitely without any transfer, sale, or other disposition unless the Securities are subsequently registered under the Securities Act and the securities laws of any applicable jurisdictions or, in the opinion of counsel acceptable to the Company, such registration is not required.

(f) Understands that (i) the Company and Manager have no obligation to register any Securities for resale or transfer under the Securities Act or any state securities laws or to take any action (including the filing of reports or the publication of information) that would make available any exemption from the registration requirements of any such laws, and (ii) the undersigned

<ol type="a" start="7">
<li>therefore may be precluded from selling or otherwise transferring or disposing of Securities or any portion thereof for an indefinite period of time or at any particular time.</li>
<li>Understands that the Securities are being offered and sold in reliance on specific exemptions from the registration requirements of federal and state laws and that the Company is relying upon the truth and accuracy of the representations, warranties, agreements, acknowledgements, and understandings set forth herein in order to determine the suitability of the undersigned to acquire Securities.</li>
<li>Understands that no federal or state agency, including the Securities and Exchange Commission or the securities commission or authorities of any state, has approved or disapproved the Securities, passed upon or endorsed the merits of the offering of the Securities, or made any finding or determination as to the fairness of the Securities for public investment.</li>
<li>Represents and warrants that (i) if an individual, the undersigned is at least twenty one (21) years of age; (ii) if an individual, the undersigned is a United States citizen; (iii) the undersigned has adequate means of providing for the undersigned's current needs and contingencies; (iv) the undersigned has no need for immediate liquidity in the undersigned's investments; (v) the undersigned maintains the undersigned's business residence at the address shown below; (vi) all investments in and commitments to non-liquid investments are, and after the purchase of the Securities will be, reasonable in relation to the undersigned's net worth and current needs; and (vii) any financial information that is provided herewith by the undersigned, or is subsequently submitted by the undersigned at the request of the Company, does or will accurately reflect the undersigned's financial condition at such time and the undersigned does not anticipate any material adverse change.</li>
<li>Represents, warrants, and agrees that, if the undersigned is acquiring the Securities in a fiduciary capacity (i) the above representations, warranties, agreements, acknowledgements, and understandings shall be deemed to have been made on behalf of the person or persons for whose benefit such the Securities are being acquired, (ii) the name of such person or persons is indicated below under the subscriber's name, and (iii) such further information as the Company deems appropriate shall be furnished regarding such person or persons.</li>
<li>Represents and warrants that the undersigned has full power to execute, deliver, and perform this Subscription Agreement and this Subscription Agreement is a legal and binding obligation and is enforceable against the undersigned in accordance with their respective terms.</li>
<li>Acknowledges that the Company has the unconditional right to accept or reject, in whole or in part, this Subscription Agreement.</li>
<li>Understands that the undersigned will be required to provide current financial and other information to the Company to enable it to determine whether the undersigned is qualified to purchase the Securities.</li>
<li>Represents and warrants that the information set forth herein concerning the undersigned is true and correct.</li>
<li>Represents and warrants that the information provided by the undersigned is true and complete and agrees that the Company may rely on the truth and accuracy of the information for purposes of its reliance on the exemptions from the registration requirements of the Securities Act afforded by Section 4(a)(2) of the Securities Act and Regulation D promulgated under the Securities Act, and of any applicable state statutes or regulations; and, further agrees that the Company may present such information to such persons as it deems appropriate if called upon to verify the information provided or to establish the availability of an exemption from registration under Section 4(a)(2) of the Securities Act, Regulation D, or any state securities statutes or regulations or if the contents are relevant to any issue in any action, suit, or proceeding to which the Company or any agent of the Company is a party or by which it is or may be bound.</li>
<li>Understands and acknowledges that the future operating results of the Company are impossible to predict and that no representations or warranties of any kind are made by the Company.</li>
<li>Represents and warrants that neither the Company nor anyone purportedly acting on behalf of the Company has made any representations or warranties respecting the business, affairs,</li>
</ol>

8

financial condition, plans, or prospects of the Company nor has the undersigned relied on any representations or warranties in the belief that they were made on behalf of any of the foregoing, nor has the undersigned relied on the absence of any such representations or warranties in reaching the decision to purchase the Securities.

(r) Acknowledges that certain information about the Company contained in this Subscription Agreement or provided pursuant hereto is confidential and proprietary to the Company, and is being submitted to the undersigned solely for the undersigned's confidential use with the express understanding that, without the prior express permission of the Company the undersigned will not release or reproduce this document or any other document provided herewith or discuss the information contained herein for any purpose other than evaluating a potential investment in the Company.

(s) Acknowledges that the undersigned is fully familiar with the Company and its business, operations, and condition (financial and other), assets, liabilities, and prospects.

(t) Represents and warrants that the undersigned, in determining to purchase the Securities, has relied solely upon the advice of the undersigned's legal counsel and accountants or other financial advisers with respect to the tax and other considerations relating to the purchase of the Securities.

(u) Acknowledges that the undersigned has had the opportunity to ask questions and receive answers concerning the terms and conditions of the Offering; the business, affairs, operating policies, and prospects of the Company; and any other information, including all documents, records, and books pertaining to the Company, that the undersigned deems necessary or appropriate to enable the undersigned to make an investment decision in connection with the purchase of Securities.

(v) Without limiting the foregoing, represents and warrants that the undersigned (i) has had access to and has been offered during the course of discussions concerning the purchase of the Securities any and all material information (including all books, records, and other documents pertaining to the Company) that the undersigned deems necessary or appropriate to enable the undersigned to make an investment decision in connection with the purchase of the Securities and (ii) has had the opportunity to ask such questions and inspect such information concerning the offering and the business, affairs, operations, condition, and assets of the Company as the undersigned deems necessary or appropriate to make an investment decision in connection with the purchase of the Securities and to enable the undersigned to understand more fully the nature the undersigned's investment and to verify the accuracy of the information provided to the undersigned.

(w) Understands and acknowledges that the Company is subject to a number of important risks and uncertainties that include those set forth in the Private Placement Memorandum.

(x) Represents and warrants that the money that the Subscriber seeks to invest in the Company is not derived from any criminal enterprise or activity

8. **Accredited Investor Status**. In order to demonstrate the undersigned's accredited investor status the undersigned is providing a copy of one of the following:
   (a) Copies of IRS forms reporting income (e.g., Form W-2, Form 1099, Schedule K-1, Form 1040) for the two most recent years, plus written representations that the undersigned has a reasonable expectation that his or her income for the current year will qualify for such status;
   (b) bank and brokerage statements, tax assessments, appraisal reports from third parties and consumer (credit) reports, dated within the prior three months, plus written representation that the investor has disclosed all liabilities necessary to make a determination of net worth; and
   (c) written confirmation in the form annexed hereto as **Exhibit B** from a registered broker-dealer, SEC registered investment adviser, licensed attorney in good standing or certified public accountant duly registered and in good standing that such person has taken reasonable steps to verify that the undersigned is an accredited investor within the prior three months and has determined such undersigned is an accredited investor.

9. **Miscellaneous**.
   (a) **Choice of Law**. This Subscription Agreement and all questions relating to its validity, interpretation, performance, and enforcement, will be governed by and construed in accordance with the laws of the State of Delaware, notwithstanding any Delaware or other conflict-of-law provision to the contrary.
   (b) **Indemnification**. The undersigned hereby agrees to indemnify and hold harmless the Company and its officers, directors, managers, security holders, employees, agents, and counsel against any and all losses, claims, demands, liabilities, and expenses (including reasonable legal or other expenses, includingreasonable attorneys' fees) incurred by each such person in connection with defending or investigating any such claims or liabilities, whether or not resulting in any liability to such person, to which any such indemnified party may become subject under the Securities Act of 1933, as amended, under any other statue, at common law, or otherwise, insofar as such losses, claims, demands, liabilities, and expenses (a) arise out of or are based upon any untrue statement or alleged untrue statement of a material fact made by the undersigned and contained in this Subscription Agreement, or (b) arise out of or are based upon any breach by the undersigned of any representation, warranty, or agreement made by the undersigned contained herein or therein.
   (c) **Binding Agreement**. This Subscription Agreement shall be binding upon and inure to the benefit of the parties hereto and the respective heirs, personal representatives, successors, and assigns of the parties hereto, except that the undersigned may not assign or transfer any rights or obligations under this Subscription Agreement without the prior written consent of the Company.
   (d) **Entire Agreement**. This Subscription Agreement contains the entire understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, inducements, or conditions, express or implied, oral or written, except as herein contained.

   **IN WITNESS WHEREOF**, intending to irrevocably bind the undersigned and the heirs, personal representatives, successors, and assigns of the undersigned and to be bound by this Subscription Agreement, the undersigned is executing this Subscription Agreement on the date indicated.

   *Signature page to follow*

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CROWDSTREET                               CSTREET 0000237

Dated: _____, 2022

Name in which Individual Investment Is to Be Registered:

_____
(Print Name of Individual Subscriber)

Signature of Individual Subscriber:

_____
(Print Name of Individual Co-Subscriber)

Signature of Individual Co-Subscriber:

_____

Name of corporate, partnership, limited liability company, trust, qualified pension, profit sharing, stock/Keogh, or 401k Plan Subscriber:

_____

By: _____
(Name of first executing party)

By: _____
(Signature of first executing party)

Its: _____

By: _____
(Name of second executing party, if any)

By: _____
(Signature of second executing party, if any)

Its: _____

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CROWDSTREET                    CSTREET 0000238

Dated: _____, 2022

**ACCEPTED**:
**ONH AFC CS Investors LLC**

_____

By: One Night Holdings LLC, its manager

  By:  Elie Schwartz, its manager

12

**ANNEX A**

**COMPANY AGREEMENT SIGNATURE PAGE**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CROWDSTREET        CSTREET 0000240

**ANNEX B**

**This form should be submitted by the person signing this form directly to ONH AFC CS Investors LLC by email to ███████████████  We are unable to accept this form if submitted by the Client.**

_____ (insert name of client) ("Client") has requested that the undersigned provide to ONH AFC CS Investors LLC (the "Company") with this Accredited Investor Status Verification Letter (this "Status Letter") to assist the Company in its verification of the Client's status as an "Accredited Investor" within the meaning of Rule 501(a) of the U.S. Securities Act of 1933, as amended, in connection with the Client's potential purchase of securities (the "Securities") offered for sale by the Company or one of its affiliates.

I hereby certify that I am (please check appropriate box)

☐ a broker-dealer registered with the U.S. Securities and Exchange Commission;

☐ an investment adviser registered with the U.S. Securities and Exchange Commission;

☐ a licensed attorney in good standing under the laws of the jurisdiction in which he or she is admitted to practice law; or

☐ a certified public account in good standing under the laws of the place of his or her residence or principal office.

The undersigned certifies that the undersigned has taken reasonable steps to verify that the Client is an Accredited Investor within the prior three months and has determined that the Client is an accredited investor. This Status Letter may be relied upon by the Company in connection with the offering and sale of the Securities.

Dated: _____

Name of Firm: _____

By: _____

Name: _____

Title: _____

E-mail address: _____

Phone number: _____

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CROWDSTREET                    CSTREET 0000241